*CJP Supp. 127 Opinion
HANLON, Chairperson.
This disciplinary matter concerns Judge Susanne S. Shaw, a judge of the Orange County Unified Superior Court. Judge Shaw was elected to the Orange County Municipal Court in 1984 and took her oath of office on January 7, 1985. As a result of the unification of the courts, Judge Shaw became a judge of the Orange County Unified Superior Court on August 10, 1998.
SUMMARY
The Commission on Judicial Performance concludes that Judge Shaw committed two acts of conduct prejudicial to the administration of justice in making an ex parte comment to two deputy district attorneys (count 2) and making a statement to a thin white defendant she had ordered into custody that was reasonably understood to infer that he might be vulnerable to sexual assault in jail (count 8). In addition, the commission concludes that Judge Shaw’s comments to a deputy district attorney concerning her alleged drinking habits and those of her future father-in-law constituted improper action (count 1). This conduct violated the California Code of Judicial Ethics, canon 1 (a judge shall uphold the integrity and independence of the judiciary) and canon 2A (“[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary”). Judge Shaw’s ex parte comment also violated the proscription in canon 3B(7) against ex parte communications, and her comments to the thin white defendant and the deputy district attorney violated canon 3B(4) which provides that a judge should be patient, dignified and courteous to litigants and attorneys. The commission determines that a public admonishment is the appropriate sanction for the two acts of prejudicial conduct and one count of improper action.
The commission continues to have concerns with some of the types of behavior alleged in the other counts, particularly the allegation of singing in the courtroom (count 11). The commission, however, accepts the masters’ findings that none of the allegations were sustained by clear and convincing evidence and accordingly counts 3, 4, 5, 6, 7, 9, 10, 11 and 12 are dismissed.
PROCEDURAL HISTORY
Formal proceedings in this matter commenced with the filing on May 3, 1999, of a notice of formal proceedings setting forth 12 counts. On May 27, 1999, Judge Shaw filed her verified answer. A first amended notice of formal proceedings was filed on October 26, 1999.
*CJP Supp. 128 As provided for by rule 121(b) of the Rules of the Commission on Judicial Performance, the Supreme Court appointed three special masters to conduct an evidentiary hearing and to prepare a written report: Justice Reuben A. Ortega, presiding, of the Court of Appeal, Second Appellate District, Division One; Justice Douglas E. Swager of the Court of Appeal, First Appellate District, Division One; and Judge Steven Z. Perren (now justice[1]) of the Superior Court of Ventura County. A status conference was held in Los Angeles on September 16, 1999. The evidentiary hearing was held in Santa Ana before the special masters commencing November 15, 1999, and concluding November 18, 1999. The special masters filed their report to the commission on February 15, 2000.
Following the receipt of objections and briefs from Judge Shaw and the office of trial counsel, the matter was orally argued before the commission on May 2, 2000. Mr. William E. Smith presented argument on behalf of trial counsel and Mr. Thomas M. Goethals presented argument on behalf of Judge Shaw. Judge Shaw also spoke on her own behalf.
FINDINGS AND CONCLUSIONS ON SUSTAINED COUNTS
A. Count One
The notice of formal proceedings charges that in December 1993, in a particular case, Judge Shaw became angry at a deputy district attorney who would not offer a DUI[2] defendant a reduced charge and stated that the prosecutor lacked discretion and human kindness and would regret her decision when she was twenty years older. It further alleges that Judge Shaw called the prosecutor a hypocrite for prosecuting the same type of conduct that the prosecutor engaged in on the weekends, and also referred to the drinking habits of the prosecutor’s future father-in-law, a former judge. Judge Shaw’s comments are alleged to have been intimidating, demeaning, undignified and discourteous, and appeared to reflect bias and embroilment, in violation of the former California Code of Judicial Conduct canons 1, 2A and 3B(4).
The masters found that in December 1993, a DUI case involving a military pilot was sent to Judge Shaw for trial. Ms. S_was the prosecutor. Prior to the commencement of trial, Judge Shaw conducted settlement discussions. *CJP Supp. 129 During the discussions, Judge Shaw became persuaded that a proper disposition would be a plea to the reduced charge of “wet reckless,”[3] thus saving the defendant’s military career. The district attorney’s office refused to accept such a proposal and Judge Shaw summoned Ms. S_’s supervisor.
The masters found that Judge Shaw in her official capacity and in a judicial setting commented that several members of the district attorney’s office had in the past been “major alcoholics” and had “suffered more than one DUI” without losing their jobs. She remarked to Ms. S_ that if she did not believe this, she could ask her future father-in-law, Judge L_, about it. The masters believed that Judge Shaw did not mean to imply that Judge L_was an intemperate drinker, but found that the remark did just that. Judge Shaw also made a remark that implied that Ms. S_and her flaneé drank on the weekends. Again, the masters found that although Judge Shaw did not intend to imply that Ms. S_and her flaneé drank intemperately, the comment was so perceived by Ms. S_. The masters also found that Judge Shaw told Ms. S_that she lacked discretion and would, twenty years later, regret her refusal to accept a plea to the lesser offense.
The masters opined that the proper exercise of the judicial function contemplates that a judge can and should make diligent efforts to settle a case, and, if unsuccessful, conduct a fair and impartial trial. They concluded that, accordingly, Judge Shaw’s conduct did not necessarily appear to reflect bias or embroilment and did not interfere in the district attorney’s authority.
The masters, however, found that Judge Shaw’s comments to Ms. S_ were demeaning and discourteous, and thus necessarily undignified, in violation of California Code of Judicial Conduct canon 3B(4). They explained: “The comments personalized the situation at the expense of one of the advocates and thus went beyond what was acceptable in trying to settle the case. We recognize that the atmosphere of a misdemeanor arraignment/trial court is quite different from the more staid environs of other institutions and that this difference is often manifested in a ‘rough and tumble’ way of handling cases. This, however, does not justify personalizing negotiations by references to a lawyer, her home and her family.”
The masters concluded that Judge Shaw’s conduct constituted improper action, rather than prejudicial conduct as urged by the examiners. The masters recognized that in the cases cited by the examiners,[4] the Supreme Court had *CJP Supp. 130 held that a judge’s upbraiding of counsel could amount to conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The masters, however, concluded that an “objective observer would not magnify one strenuous effort to settle a case into conduct that is prejudicial to public esteem for the judicial office.” They noted that Judge Shaw did not impugn the attorney’s overall competence, but only questioned the attorney’s assessment of a particular case in an effort to achieve what Judge Shaw believed to be a fair resolution of the case.
The commission unanimously agreed with the masters that Judge Shaw’s personalized comments went beyond what was acceptable in trying to settle a case and were demeaning, discourteous and undignified in violation of California Code of Judicial Conduct canon 3B(4). The commission also unanimously agrees that Judge Shaw’s comments constituted improper action and did not amount to prejudicial conduct.
B. Count Two
The notice charges that in May 1996, following the arraignment of codefendants on a misdemeanor case concerning protesters in support of animal rights, Judge Shaw spoke about the case to two deputy district attorneys who happened to be in court on unrelated matters. She told them that she had just arraigned the defendants and had offered them a thirty-day sentence if they pled guilty, and that she did not want the district attorney’s office to undercut her offer. No one was present on behalf of the defendants when Judge Shaw made those comments. This conduct is alleged to have constituted improper ex parte communication and to have given the appearance of bias and embroilment, in violation of California Code of Judicial Ethics canons 1, 2A and 3B(7).
*CJP Supp. 131 The masters found that in May 1996, Judge Shaw presided over the arraignment of several defendants in an animal rights case. The district attorney usually did not have a deputy present during Judge Shaw’s arraignment calendars and no assigned deputy was present for that morning calendar.[5] The audience, supportive of the defendants, became disruptive. During the proceedings, Judge Shaw gave an indicated sentence, which the defendants laughingly declined. Because the defendants refused to stay away from the university campus where they had been arrested, Judge Shaw declined to release them on their own recognizance and instead set bail. The defendants were taken into custody.
As the arraignment ended and Judge Shaw left the bench, she noticed two deputy district attorneys in the courtroom. She gestured for the two to come over to her and they complied. The masters found that Judge Shaw told the deputies, who were not involved in the matter, that she did not want the district attorney’s office to “undercut” her on the case. Counsel for the defendants were not present at the time.
The masters found that Judge Shaw’s ex parte comment violated California Code of Judicial Ethics canon 3B(7), which provides, in part, that a “judge shall not initiate ... ex parte communications.” The masters felt that, although the comment did not reflect any general bias, it gave the appearance of embroilment in the case. They noted that Judge Shaw knew she would probably never see the case again and the comment gave the appearance that she was nevertheless trying to have some degree of influence over the future course of the matter.
The masters concluded that the comment constituted prejudicial misconduct, as an objective observer, seeing a judge communicate with representatives of one side of a case, especially when it involved unruly defendants, would feel that the judge was trying to influence the case without interference from the other side. The masters were of the opinion that Judge Shaw did not intend to take unfair advantage, but that her remark gave that appearance. They noted that the judiciary must rigorously protect its image of neutrality, and that this type of comment can only inflict damage to that image and lessen the regard in which the judiciary is held.
The masters further stated that the comment could not be excused on the basis of the “culture” of Harbor Justice Center or on the ground that it was necessary for administrative or other proper purpose. Although they appreciated the necessity of innovative techniques when high caseloads and insufficient staffing threaten to overwhelm the court and that “a certain degree of *CJP Supp. 132 informality may evolve in order to keep the ship afloat,” they concluded, “ex parte communications of this sort cannot be part of that informality.”
The commission unanimously agrees that Judge Shaw’s ex parte communication violated California Code of Judicial Ethics canon 3B(7) and gave the appearance of embroilment in the case in violation of canon 2A. The commission also unanimously agrees that the comment constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
C. Count Eight
The notice alleges that on January 15, 1997, during the arraignment calendar, after Judge Shaw remanded a particular defendant as a result of an increase in bail, she made a comment that referred to the defendant’s physical appearance in connection with the prospect of incarceration that was understood to suggest that the defendant might be subject to unwanted sexual activity in jail. Judge Shaw’s comment is alleged to have been intimidating, undignified and discourteous, in violation of the California Code of Judicial Ethics canons 1, 2A and 3B(4).
The masters found this to be “the most troubling of the allegations.” Although Judge Shaw denied that she made the comment, the masters found that Judge Shaw, while incarcerating a slightly built white male, made a comment that was reasonably understood by several different observers as inferring that thin or skinny white males in prison were particularly vulnerable to sexual assault.
Judge Shaw contends that there is not clear and convincing evidence to support the masters’ findings and that she cannot be held accountable for what a particular listener may infer from her actual words.
Although there was no transcript of the proceeding, the witnesses before the masters were consistent in their testimony as to what they had heard at the arraignment hearing two and a half years earlier. The defendant testified: “She looked right at me and asked me if I knew what they do to skinny little white boys in jail.” The defendant’s father, who was also in court, testified: “She made reference to little white boys, what they do to little white boys in jail.” On cross-examination he reiterated that Judge Shaw said, “little white boys” and stated on redirect examination that he wrote, “little white boys” in the notes he had made in connection with the case. Another person who was in the courtroom was sufficiently upset by the comment that he wrote to the commission. He testified before the masters that Judge Shaw said, “You know what they do to skinny white boys in prison.” Another defendant who was present on January 15, 1997, corroborated the testimony of the other witnesses.
*CJP Supp. 133 In addition, the defendant’s attorney reluctantly corroborated the allegations. The masters noted that it “was plain throughout his testimony that he would rather have been anywhere but in a courtroom testifying in this matter. Even though he made no effort to mislead, it was plain he would rather have walked through fire than say anything to harm Judge Shaw. At times, his testimony had to be pulled from him. Ironically, it is this reluctance that makes him very convincing and turns his concession that Judge Shaw ‘may’ have made such a comment into a most powerful bit of evidence.”
The masters concluded that the comment constituted prejudicial misconduct in violation of California Code of Judicial Ethics canon 3B(4). They noted that it “personalized the situation to [the defendant’s] race, gender, and physique.” Even if Judge Shaw meant no sexual reference, “such a comment could only be taken as intimidating by any reasonable observer. It was discourteous and undignified. The criminal justice system is designed to impose appropriate penalties for criminal behavior, not raise the specter of possible consequences disproportionate to the defendant’s malfeasance. We fail to see how the comment would not have intimidated [the defendant].”
The masters were impressed with Judge Shaw as a judge and reluctant to make any findings against her. They were critical of many of the witnesses against Judge Shaw and often found her testimony more persuasive. They were persuaded, however, that Judge Shaw made the statement, although they found that she intended no insult, and they did not believe that malice or ill will motivated the comment. The masters opined that the comment “surely came from a tendency to be flip on occasion.” The masters noted that “this tendency can be dangerous and inappropriate. Such a comment can be easily misconstrued by people whose sensitivities are understandably heightened by their involuntary appearance in what is already an intimidating setting. Gratuitously piling intimidation on top of an already unpleasant situation brings the judicial system into disrepute.”
The commission unanimously adopts the masters’ findings of fact that the allegations in count eight are supported by clear and convincing evidence and their conclusion that the comment constituted conduct prejudicial to the administration of justice that brings the judiciary into disrepute. The record contains clear and convincing evidence that Judge Shaw made a statement that was reasonably understood to infer that skinny white males in prison were particularly vulnerable to sexual assault. Each of the five witnesses agreed that the comment was made and to the essence of the comment.
*CJP Supp. 134 FINDINGS AND CONCLUSIONS ON DISMISSED COUNTS
A. Count Three
The notice alleges that in 1996 and 1997, Judge Shaw frequently began her arraignment calendars with a speech regarding the use of alcohol, using a shot glass and a placemat with a picture of an eagle on it as props. Judge Shaw’s speech included invitations to the defendants to “fly with the eagles rather than trot with the turkeys,” and references to the defendants’ “inner child.” These comments are alleged to have been undignified and to have created the appearance of prejudgment and a lack of impartiality, in violation of California Code of Judicial Ethics canons 1, 2A and 3B(4).
The masters found that Judge Shaw made the speeches but concluded “that the evidence, when tested by the clear and convincing evidence standard, fails to show impropriety in Judge Shaw’s arraignment procedure.”
In concluding that Judge Shaw’s conduct was not undignified, the masters cite the testimony from a number of the examiners’ witnesses that they were not offended by Judge Shaw’s speeches or that they thought portions of the presentation were well taken. The masters found that there was no authority prohibiting a judge from using props in conducting certain types of hearings.
The commission has some concerns with the masters’ approach on this count. The fact that a litigant may agree with part of a judge’s presentation does not save the speech from being undignified. Nonetheless, due respect for the masters’ findings compels the commission to conclude that the charges in count three were not proved by clear and convincing evidence.[6] Accordingly, the charges alleged in count three are dismissed.
B. Count Four
The notice alleges that on July 3, 1996, at the beginning of the morning arraignment calendar, Judge Shaw called a DUI case and, before asking the defendant how he wished to plead, asked if the defendant’s wife was in the audience. When the defendant’s wife raised her hand, Judge Shaw allegedly pointed a shot glass at her and asked if she would like to stand at her *CJP Supp. 135 husband’s graveside. Judge Shaw’s comments were alleged to be undignified and discourteous, and to have created the appearance of prejudgment and a lack of impartiality, in violation of California Code of Judicial Ethics canons 1, 2A and 3B(4).
The masters noted that two witnesses testified that Judge Shaw called the first case of the morning, asked the defendant if his wife was present, and then asked the wife how she would like to be standing by his graveside. There was no evidence that Judge Shaw pointed a shot glass at the wife. The masters, however, stated that they lacked sufficient confidence in these witnesses to conclude, by clear and convincing evidence, that the incident occurred. The masters went on to observe that while “a judge should ordinarily not single out a defendant’s family member and direct comments to that person,” the propriety of particular comments might depend on the particular circumstances and context.
The commission, having considered the masters’ findings and all the evidence, concludes that the charges in count four were not proved by clear and convincing evidence. Accordingly, the charges alleged in count four are dismissed.
C. Count Five
The notice alleges that on July 3, 1996, during the afternoon arraignment calendar, Judge Shaw urged all of the defendants to take responsibility for their actions and said that anything else was “whining.” These comments are alleged to have improperly suggested that the defendants should plead guilty, and to have created the appearance of prejudgment and a lack of impartiality, in violation of California Code of Judicial Ethics canons 1 and 2A.
The masters found that Judge Shaw urged the defendants to take responsibility for their actions and told people she would appreciate it if they did not whine. The masters, however, found no impropriety, noting that at arraignments Judge Shaw apprises the defendants of what will happen if they plead guilty (including having to take responsibility) and makes offers on the cases. If a defendant chooses to plead not guilty, Judge Shaw sets the case for a pretrial hearing in another court.
The commission is concerned that Judge Shaw’s approach may suggest prejudgment or a lack of impartiality to a defendant appearing in court for the first time, or even to an “objective observer.” Nonetheless, due deference to the masters’ findings compels the commission to conclude that the allegations are not supported by clear and convincing evidence and the allegations in count five are dismissed.
*CJP Supp. 136 D. Count Six
The notice alleges that on July 3, 1996, during the afternoon arraignment calendar in a particular DUI case, Judge Shaw overheard an exchange where the defendant’s mother told the deputy public defender that her daughter wanted to enter a not guilty plea and the attorney responded that the daughter was guilty. Judge Shaw allegedly told the daughter that it was not in her best interest to enter a not guilty plea, and told the defendant’s mother that she could be paying for a coffin in addition to bail. Judge Shaw’s comments are alleged to have been undignified and discourteous, and to have created the appearance of embroilment, prejudgment and a lack of impartiality, in violation of California Code of Judicial Ethics canons 1, 2A and 3B(4).
The masters found that Judge Shaw increased bail because she discovered that the defendant had been driving on a suspended license and that she spoke to the defendant’s mother—saying she should be happy she did not have to buy her daughter a coffin—only because the mother interjected herself into the proceeding. The masters noted that in setting bail Judge Shaw was justified in attempting to apprise the defendant and the mother of the seriousness of the conduct. The masters noted that all the allegations in this count rest solely on the testimony of the mother and daughter and that they lack sufficient confidence in these witnesses to establish any allegations. In sum, the masters found that the allegations were not supported by clear and convincing evidence.
The commission, having considered the masters’ findings and all the evidence, concludes that the charges in count six were not proved by clear and convincing evidence. Accordingly, the charges alleged in count six are dismissed.
E. Count Seven
The notice alleges that on November 13, 1996, during a jury trial in a particular DUI case, Judge Shaw interrupted a defense witness who testified that she had been driving the vehicle. Judge Shaw asked a few questions, then before the witness could answer, read the Penal Code section for perjury to the witness in front of the jury. It is alleged that, by this conduct, Judge Shaw assumed the role of an advocate and abandoned her duty to be impartial, and displayed bias and embroilment, in violation of California Code of Judicial Ethics canons 1, 2A, and 3B(4).
The masters found that the factual allegations were proven. During the DUI case, the defense called a young woman to testify. She had been in the vehicle when the defendant was arrested and had, up to this point, been *CJP Supp. 137 considered a passenger. The woman testified, in a manner that raised serious questions concerning her credibility, that she had in fact been the driver. The masters found that Judge Shaw became concerned for the consequences the witness might suffer by committing pequry. She interrupted proceedings and, with the jury present, Judge Shaw read the perjury statute to the witness. The masters noted that Judge Shaw thereafter realized she had committed error and notified defense counsel that she would grant a new trial if the jury convicted the defendant. Judge Shaw declared a mistrial after the jury was unable to agree on a verdict.
The masters concluded that a judge may comment on evidence (citing People v. Proctor (1992) 4 Cal.4th 499 [15 Cal.Rptr.2d 340, 842 P.2d 1100]), but that Judge Shaw committed legal error in reading the perjury statute to the witness in front of the jury. They concluded, however, that Judge Shaw’s legal error was not properly subject to judicial discipline, citing Oberholzer v. Commission on Judicial Performance (1999) 20 Cal.4th 371, 396, footnote 20 [84 Cal.Rptr.2d 466, 975 P.2d 663]. The masters found that Judge Shaw did not embroil herself in the matter. The masters opined that she “concluded a witness was lying and let it be known. Her mistake was in failing to comply with the strict procedures in place for imparting such an opinion to a jury.” The masters also found that Judge Shaw did not become an advocate for either party. They noted that her concern was directed solely at the witness and they opined that she would have had the same motivation if it had been a prosecution witness instead of a defense witness. Finally, the masters found that Judge Shaw did not abandon her duty to be impartial as her action “was not aimed at influencing the outcome of the case, but instead at keeping a young witness from putting herself in jeopardy.”
The masters then distinguished the cases cited by the examiners, finding that each case involved flagrant misconduct that far exceeded anything that Judge Shaw had done.[7] They concluded that Judge Shaw did interrupt the proceedings and read the perjury statute to the witness, but then she made it plain she would not let a conviction stand in light of her acknowledged error.
The commission agrees that Judge Shaw committed legal error and that her mistake does not warrant discipline. In Oberholzer v. Commission on Judicial Performance, supra, 20 Cal.4th at page 398, the Supreme Court *CJP Supp. 138 wrote: “In summary, a judge who commits legal error which, in addition, clearly and convincingly reflects bad faith . . . , bias . . . , abuse of authority . . . , disregard for fundamental rights . . . , intentional disregard of the law . . . , or any purpose other than the faithful discharge of judicial duty . . . , is subject to investigation. . . . Mere legal error, without more, however, is insufficient to support a finding that a judge has violated the Code of Judicial Ethics and thus should be disciplined.” (Citations omitted.)
Although the examiners are correct in noting that Judge Shaw did not claim that she intended to comment on the evidence to the jury, the record does not support a finding of the additional element required to elevate legal error to a violation of the California Code of Judicial Ethics. Judge Shaw acted out of concern that the witness was perjuring herself. She quickly recognized her error and assured defense counsel that she would not allow it to prejudice his client. The record does not contain clear and convincing evidence of bad faith, bias, abuse of authority, disregard of fundamental rights, intentional disregard of the law or any purpose other than the faithful discharge of her judicial duty.
F. Count Nine
The notice alleges that on April 9, 1997, during an arraignment calendar, Judge Shaw stated to a DUI defendant before he entered a plea, “You better think about what you’ve done. You could have killed somebody.” Judge Shaw’s comments were alleged to have been discourteous and to have reflected prejudgment and a lack of impartiality, in violation of California Code of Judicial Ethics canons 1, 2A and 3B(4).
The masters noted that impropriety depends on context. They commented that it would be inappropriate to utter such remarks to a defendant at the beginning of trial, but a judge could comment on the severity of the conduct in determining an appropriate sentence.
The examiners offered Mr. D_’s testimony that the remarks were directed to the defendants who had not pled guilty nor asked for an indicated sentence. The masters found Mr. D_to be “a self-styled legal expert” who had “thoroughly impeached his own credibility with his grossly exaggerated testimony about his legal experience.” They declined to sustain a charge dependent solely on Mr. D_’s testimony, concluding that the evidence “failed to demonstrate clearly and convincingly that Judge Shaw’s comments were delivered in an improper context.”
The commission, having considered the masters’ findings and all the evidence, concludes that the charges in count nine were not proved by clear and convincing evidence. Accordingly, the charges alleged in count nine are dismissed.
*CJP Supp. 139 G. Count 10
The notice alleges that on May 19, 1997, during the morning arraignment calendar in a particular DUI case, Judge Shaw stated to the defendant as she remanded him into custody, “How could you do that? You might have killed somebody.” The defendant was being remanded as a result of an increase in bail; he had not entered a guilty plea or otherwise been convicted. Judge Shaw’s comments are alleged to have been discourteous and to have reflected prejudgment and a lack of impartiality, in violation of California Code of Judicial Ethics canons 1, 2A and 3B(4).
The masters found that the comments were delivered during the setting of bail, and that a judge is entitled to assume the truth of the charges at that time. They noted that the defendant testified that his blood-alcohol level was nearly three times the statutory limit and that Judge Shaw’s comments were accurate. The masters found that the comments had the effect of informing the defendant that bail was required because it was unacceptable that the defendant had chosen to drive in such a condition as to constitute a danger to public safety. The masters concluded that the comments were not discourteous, and did not reflect prejudgment or lack of impartiality.
The commission, having considered the masters’ findings and all the evidence, concludes that the charges in count 10 were not proved by clear and convincing evidence. Accordingly, the charges alleged in count 10 are dismissed.
H. Count 11
The notice alleges that on June 16, 1997, a defendant charged with petty theft appeared before Judge Shaw and during a pause in the proceedings, Judge Shaw began singing, “when you’re stealing, when you’re stealing,” to the tune of “When You’re Smiling (The Whole World Smiles With You).” It also alleges that on December 26, 1996, a defendant appeared before Judge Shaw on a bench warrant for a speeding ticket and when he questioned Judge Shaw’s indicated sentence of 30 days, Judge Shaw sang in response, “fa la la la la.” When the same defendant appeared in early February 1997, for arraignment on a disturbing the peace charge, which arose out of an arrest on Christmas 1996, Judge Shaw again sang, “fa la la la la” to him. Count 11 further alleges that on other occasions Judge Shaw sang in court at the expense of the defendants, for example singing, “bye-bye, you’re going to jail.” Judge Shaw’s conduct is alleged to have been undignified and demeaning, in violation of California Code of Judicial Ethics canons 1, 2A and 3B(4).
The masters noted that Judge Shaw admitted that she sang in court on occasion since she has “a happy heart” and sings “for levity.” They noted that *CJP Supp. 140 levity can relieve the tension inherent in court proceedings. It does not always work, “but there is no general prohibition against levity nor, so far as we are aware, against using singing as a form of levity.”
The masters recognize that it would be inappropriate to sing in court in a manner that mocked or denigrated a defendant. They found, however, that the specific charges in count 11 were not supported by clear and convincing evidence. The masters implicitly agree that singing, “when you’re stealing, when you’re stealing” to a defendant charged with petty theft would be inappropriate, but found that the evidence put forward by the examiners did not carry their burden of proof. The masters found that Judge Shaw sings in court and they acknowledged that there was a possibility that Judge Shaw may have on occasion sung inappropriately in court. The masters concluded, however, that there was insufficient evidence that Judge Shaw had sung inappropriately on any particular occasion.
The commission remains concerned that singing in court is problematic, as are many attempts to inject levity into court proceedings. Although on occasion humor may defuse tensions in court proceedings, it does not always work and may have a negative effect on the parties and members of the public present in the courtroom. The singing of snippets of songs seems particularly likely to raise questions in the minds of some of the listeners, regardless of the judge’s intentions. Nonetheless, having considered the masters’ findings and all the evidence, the commission accepts that the specific charges in count 11 were not proved by clear and convincing evidence. Accordingly, the charges alleged in count 11 are dismissed.
I. Count 12
The notice alleges that on June 30, 1997, during the morning arraignment calendar, in a specific case in which a young defendant was charged with being drunk in public outside a club for young people, Judge Shaw commented, “this looks real bad.” Judge Shaw then commented about the hazards of drunk driving, using a shot glass as a prop, although she acknowledged that the defendant was not driving. While reviewing the police report, Judge Shaw stated, “I see you had a childhood accident, so you should know the dangers of drunk driving.” In fact, the childhood traffic accident, which was noted on the first page of the police report, did not involve drunk driving. Judge Shaw concluded by stating, “What would your parents have done if the officers had come to your house to tell them that you were dead? This club isn’t a place for you to go.” Judge Shaw’s comments are alleged to have been gratuitous, undignified, discourteous and intimidating, and to have reflected prejudgment and a lack of impartiality, in violation of California Code of Judicial Ethics canons 1, 2A and 3B(4).
*CJP Supp. 141 The masters found that during the arraignment Judge Shaw commented that the situation looked bad, terrible, and awful. She noted that the defendant had incurred injuries in a childhood accident and said that he, of all people, should be aware of the dangers of drunk driving. Judge Shaw asked him how he would like it if the police went to his home in the middle of the night to tell his parents he was dead because he had gone to this club. She told him he should not go to the nightclub.
The masters, however, found that, although the comments upset the defendant and his family, they did not constitute misconduct. The comments were uttered during an arraignment hearing while Judge Shaw was considering whether to let the defendant remain free on his own recognizance or whether to impose conditions on the release. The masters recognized that personalized comments, such as the reference to the childhood accident, often cross the line of proper judicial behavior. The masters noted, “[w]e find it insignificant that Judge Shaw mistakenly commented on the dangers of drunk driving as opposed to drunk walking in a parking lot. In setting conditions for an OR release, she was trying to point out to this young man that the justice system does not necessarily look kindly on such conduct.” They found that the comment about police going to the home to inform the family of his death was also an attempt to impress upon the young defendant that his conduct can have a severe impact on his family as well as himself and must not be repeated if he is to comply with the conditions of an own recognizance release. The masters conclude that there was nothing gratuitous, undignified or discourteous about the remarks.
The commission, having considered the masters’ findings and all the evidence, concludes that the charges in count 12 were not proved by clear and convincing evidence. Accordingly, the charges alleged in count 12 are dismissed.
DISCIPLINE
The Supreme Court has indicated that the purpose of a commission disciplinary proceeding is not punishment, “but rather the protection of the public, the enforcement of rigorous standards of judicial conduct, and the maintenance of public confidence in the integrity and independence of the judicial system.” (Broadman v. Commission on Judicial Performance (1998) 18 Cal.4th 1079, 1112 [77 Cal.Rptr.2d 408, 959 P.2d 715], citing Adams v. Commission on Judicial Performance (1995) 10 Cal.4th 866, 912 [42 Cal.Rptr.2d 606, 897 P.2d 544].) The court has further noted that “choosing the proper sanction is an art, not a science, and turns on the facts of the case at bar.” (Broadman, supra, 18 Cal.4th at p. 1112, citing Furey v. Commission on Judicial Performance (1987) 43 Cal.3d 1297, 1318 [240 Cal.Rptr. 859, 743 P.2d 919].)
*CJP Supp. 142 The masters found that Judge Shaw is genuinely concerned about her community and “is a widely respected judge within the legal community who carries out her duties honestly, faithfully, diligently, and with a great deal of regard for her responsibilities.”
Her good reputation, however, does not necessarily weigh against disciplining Judge Shaw. The Supreme Court has held that honesty and a good reputation do not mitigate conduct prejudicial to the administration of justice.[8] The Supreme Court has also questioned the weight to be given to “persons who were not present, and thus cannot assess the serious nature of the incidents of misconduct, but nonetheless believe petitioner to be a fair and patient person . . ..” (Kloepfer v. Commission on Judicial Performance, supra, 49 Cal.3d at p. 866.) Indeed, the public has as great a need for protection from unethical conduct by popular judges as from unpopular judges. An outpouring of support for a judge from prosecutors, defense counsel, judges, peace officers and administrative personnel may inhibit some witnesses from coining forward and testifying.
The commission has determined that a public admonishment is the appropriate discipline for Judge Shaw’s two acts of conduct prejudicial to the administration of justice and one incident of improper action. A public admonishment assures all those who were concerned with Judge Shaw’s statement to Ms. S_, her ex parte comments to the deputy district attorneys and her comment to the thin white defendant, that these comments are not acceptable judicial behavior. This public admonishment will help educate the bench and the public as to when a judge’s comments may violate the Code of Judicial Ethics.
An admonishment is also appropriate to advise Judge Shaw that her actions are not acceptable. “Judicial personality is important to the fabric of the judicial system, and it would be dangerous to that system were the judiciary to become a group of faceless bureaucrats who attempt to fit into a mold in order to stay out of trouble.” (Rothman, Cal. Jud. Conduct Handbook (2d ed. 1999) § 1.52.) However, the cultivation of a particular judicial personality may not be used as an excuse for unethical conduct. California *CJP Supp. 143 Code of Judicial Ethics canon 3B(4) provides that a “judge shall be patient, dignified, and courteous.” (Italics added.) A judge has considerable latitude to develop her own or his own judicial “style,” but regardless of the judge’s style, she or he must respect the litigants and attorneys who appear in her or his court. When a judge fails to do so, it is the commission’s responsibility to bring such failures to the judge’s attention.
Our concern is that Judge Shaw may feel that her genuine concern for the litigants and the community somehow excuses her misconduct.[9] An irony of Judge Shaw’s defense in this action is the masters’ reliance on the testimony of judges, lawyers and others who frequent the courts and their discounting of the testimony of the defendants and their families—those individuals whom Judge Shaw seeks to reach. The record before the commission reveals that Judge Shaw has a reputation as a good judge, who “is genuinely concerned about the parties who appear before her and about the consequences of criminal conduct on victims and the community.” However, in having chosen—for the best of reasons, or because it is who she is—to run her court informally, Judge Shaw must appreciate that unless she takes steps to control her admitted weakness for blurting out something that would have been better left unsaid, her comments will on occasion embarrass or demean a litigant or attorney.
There is no better example of the harm from being flip than Judge Shaw’s comment concerning thin white males in jail (see count 8). Joking or making a casual comment about the possibility of an inmate having to endure same-gender rape while incarcerated may be perceived as not only an indifference to and acceptance of a tragic reality in our criminal justice system, but as a perhaps unintended admission of its inevitability under present conditions.
Judge Shaw is described by her supporters as frank, a straight talker, forthright, honest to a fault, and tough but fair. One of the judges who testified in support of Judge Shaw stated that “she tells you exactly what she thinks and why she thinks it, and most people can’t take the truth.” The commission, in turn, has been forthright in this public admonishment. It is confident that Judge Shaw will use this admonishment to refine her unique style that has earned her the respect of judges, prosecutors and defense counsel alike.
*CJP Supp. 144 This decision shall constitute the order of public admonishment of Judge Shaw.
Commission members Justice Daniel M. Hanlon, Mr. Michael A. Kahn, Ms. Lara Bergthold, Mr. Mike Farrell, Judge Madeleine I. Flier, Ms. Gayle Gutierrez, Mr. Patrick M. Kelly, Mrs. Crystal Lui, Judge Rise Jones Pichón, and Ms. Ramona Ripston voted in favor of this public admonishment. There is currently one public member vacancy.

 During the course of these proceedings, Judge Perren was elevated to the Court of Appeal, Second Appellate District, Division Six.

 “DUI” is a commonly used abbreviation for driving under the influence of alcohol and usually refers to arrests and convictions under Vehicle Code section 23152.

 “Wet reckless” or “reckless driving with alcohol" refers to Vehicle Code section 23103.5— acceptance of guilty or nolo contendere plea to violation of section 23103 in place of charge for violation of section 23152.

 In Fletcher v. Commission on Judicial Performance (1998) 19 Cal.4th 865, 914-916 [81 Cal.Rptr.2d 58, 968 P.2d 958], the Supreme Court found prejudicial misconduct when a judge *CJP Supp. 130 in open court expressed shock and embarrassment over the prosecutors’ conduct, and accused them of playing games with the rights of the defendants. In Kloepfer v. Commission on Judicial Performance (1989) 49 Cal.3d 826, 841-842 [264 Cal.Rptr. 100, 782 P.2d 239], the court found prejudicial misconduct when the judge told the prosecutor in open court, “you are an embarrassment to the People of the State of California and it is frightening to think that you represent their interests.” In Roberts v. Commission on Judicial Performance (1983) 33 Cal.3d 739, 745, 749 [190 Cal.Rptr. 910, 661 P.2d 1064], the court found prejudicial misconduct when a judge, in unreported proceedings in chambers, accused a new attorney of being incompetent to represent the defendant and rudely quizzed her regarding her legal experience. The court noted that the judge’s treatment of the attorney, standing alone, might not warrant censure, but “in the light of the entire record such conduct once again reflects a censurable impatience or hostility in his professional relationship with others.” In Cannon v. Commission on Judicial Qualifications (1975) 14 Cal.3d 678, 703 and footnote 4 at pages 683-684 [122 Cal.Rptr. 778, 537 P.2d 898], the court found prejudicial misconduct when a judge deliberately ridiculed attorneys without cause, including requiring a public defender to swear under oath that he had read the arrest report, inquiring into Ms legal training and experience, and commenting: “ ‘Six weeks and you are telling me you know everything there is to know about the law?’ ”

 If a deputy district attorney or a deputy public defender was needed, the judge or a member of the court staff would call for one.

 Two factors underlie this conclusion. First, in Dodds v. Commission on Judicial Performance (1995) 12 Cal.4th 163, 168 [48 Cal.Rptr.2d 106, 906 P.2d 1260], the Supreme Court noted that it gives “special weight” to factual determinations in the report of the masters, as the masters have the advantage of observing the demeanor of the various witnesses. Second, to the extent that the masters’ findings are determined to be reasonable, the countervailing evidence cannot be said to be clear and convincing.

 The masters noted that in McCartney v. Commission on Judicial Qualifications (1974) 12 Cal.3d 512 [116 Cal.Rptr. 260, 526 P.2d 268], the judge engaged in an ongoing pattern of harassing the witnesses and parties and persistently examined witnesses in a manner that demonstrated advocacy; in Kloepfer v. Commission on Judicial Performance, supra, 49 Cal.3d 826, the judge criticized and chastised a defense witness and was openly hostile to the defense; and in Roberts v. Commission on Judicial Performance, supra, 33 Cal.3d 739, the judge in a child neglect case interrupted the mother’s testimony, ordered her off the stand and refused to listen to any further testimony.

 In Kloepfer v. Commission on Judicial Performance, supra, 49 Cal.3d at page 865, the Supreme Court noted: “Several witnesses, including colleagues on the bench and attorneys who appear before him, testified that petitioner is a person of unquestioned honesty and integrity. None of the charges against petitioner suggest otherwise. This evidence, and that which confirms that petitioner had a good reputation for legal knowledge and administrative skills are not mitigating, however. [Fn. omitted.] Honesty and good legal knowledge are minimum qualifications which are expected of every judge. (Cal. Code Jud. Conduct, canons 1 & 3.) Neither these qualities nor a judge’s administrative skills can mitigate either ‘wilful misconduct’ or ‘conduct prejudicial to the administration of justice that brings the judicial office into disrepute.’ ” (See Cal. Const., art. VI, § 18, subd. (c).)

 When she appeared before the commission, Judge Shaw apologized if anyone had misunderstood her, but not for her actions. Of course, Judge Shaw should not apologize for any intent that she did not have. She should, however, recognize her role in creating a misunderstanding. For example, Judge Shaw may not have intended to imply that the prosecuting attorney drank intemperately on the weekend (see count 1), but her comment did just that.